## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

BOLIVAR ALEXANDER BELLIARD,           )
                                       )
                    Petitioner,        )
v.                                     )        Case No. CIV-11-553-M
                                       )
JUSTIN JONES, DIRECTOR,                )
                                       )
                    Respondent.        )

## REPORT AND RECOMMENDATION

Petitioner, Bolivar Alexander Belliard, has filed a *pro se* petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction on various federal constitutional grounds. Respondent has filed a Response [Doc. #14] addressing the merits of the claims raised by Petitioner. Petitioner was given the opportunity to file a reply, <u>see</u> Orders [Doc. ##16, 19], but has failed to do so within the time permitted. The matter is now at issue. For the reasons set forth below, it is recommended that the Petition be denied.

## I.    Case History

On May 12, 2009, in the District Court of Beckham County, State of Oklahoma, Petitioner entered a guilty plea in Case No. CF-2009-60, to the charge of Trafficking in Illegal Drugs (Cocaine) in violation of Okla. Stat. tit. 63, § 2-415. Petitioner was sentenced to a term of twelve years imprisonment and a $500 fine.

On May 21, 2009, Petitioner moved to withdraw his guilty plea. On June 29, 2009, a hearing was conducted and at the conclusion of the hearing, the trial court denied the

motion.  <u>See</u> State Court Records [Doc. #17], Transcript of Proceedings, Motion Hearing ("Motion Tr.").  Petitioner then appealed the denial of the motion to withdraw by filing a petition for writ of certiorari before the Oklahoma Court of Criminal Appeals ("OCCA"). <u>See</u> Petition, Exhibit 1, Brief of Petitioner.  He raised the first four grounds for relief brought in this habeas action.  <u>See</u> <u>id</u>.  By summary opinion dated June 1, 2010, the OCCA denied the petition for writ of certiorari and affirmed the trial court's order denying Petitioner's motion to withdraw plea.  <u>See</u> Response, Exhibit 5, OCCA Summary Opinion Denying Certiorari.  Thereafter, on June 17, 2010, Petitioner filed a Petition for Rehearing which the OCCA denied by order dated June 24, 2010.  <u>See</u> Response, Exhibits 6 and 7.

During the pendency of his direct appeal, Petitioner also filed  before the OCCA an Application for Evidentiary Hearing on Sixth Amendment Claims.  <u>See</u> Response, Exhibit 3.  The OCCA denied his request for an evidentiary hearing.  <u>See</u> OCCA Summary Opinion at 3, footnote 2.

## II.   **Grounds for Habeas Corpus Relief**

Petitioner incorporates by reference the following briefs filed before the OCCA on his petition for certiorari review: (1) Brief of Petitioner; (2) Supplemental Brief and Amended Proposition of Error; and (3) Petition for Rehearing.  <u>See</u> Petition Exhibits 1, 2 and 3, respectively. Petitioner does not in any way supplement these claims in his federal habeas Petition with additional argument or authority.  Instead, he relies on the argument and authority cited in support of those claims as set forth in his state court briefs.

Petitioner now seeks federal habeas corpus relief on the following grounds: (1)

Petitioner should be allowed to withdraw his guilty plea because the record establishes it was coerced and entered without deliberation as a result of ignorance, inadvertence, confusion, and misunderstanding; (2) Petitioner received ineffective assistance of trial counsel when his counsel failed to notify the State and the trial court of Petitioner's status as a foreign national and thereby invoke his rights under the Vienna Convention; (3) Petitioner's guilty plea was not knowingly and intelligently entered because he was not advised of the immigration consequences of his plea; and (4) Petitioner's judgment and sentence should be corrected with an order *nunc pro tunc* to reflect credit for time served.[1]

### III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") standards of review apply to Petitioner's grounds for relief, adjudicated on the merits by the state courts. See Turrentine v. Mullin, 390 F.3d 1181, 1188 (10th Cir. 2004). Pursuant to the AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

---

[1]Petitioner also asserts that "regarding matters of ineffective assistance of trail [sic] counsel outside the certiorari appeal record, [Petitioner] filed an application for evidentiary hearing on the Sixth Amendment claim with his Brief-in-Chief on December 10, 2009, in accordance with Rule 3.11(b)(3)(b) of Rules of the Court of Criminal Appeals . . . ." See Petition at 13, Ground Five. Petitioner does not identify any constitutional error or otherwise set forth a ground for relief. And, as with his other grounds for relief, he incorporates by reference the arguments set forth in his state court briefs. A review of those briefs likewise fails to reveal any federal constitutional challenge related to the evidentiary hearing.

As this claim appears to be directed to the OCCA and its procedural rule governing evidentiary hearings in direct appeals, the Court finds this inadvertent inclusion of Petitioner's argument directed toward the OCCA does not invoke or warrant federal habeas review.

Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. See Gipson v. Jordan, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result – not its rationale – is 'legally or factually unreasonable.'").

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself. Id. at 406. A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between *clearly* erroneous and unreasonable to all reasonable jurists.'" House v. Hatch, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting Maynard v. Boone, 468 F.3d 665, 670 (10th Cir. 2006)). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" Id. (quoting Maynard, 468 F.3d at 671).

4

As the Supreme Court has recently emphasized, "AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  Renico v. Lett, 130 S.Ct.1855, 1866 (2010).

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Moreover, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.  See 28 U.S.C. § 2254(e)(1).

## IV.   Analysis

### A.   Ground One – Challenge to the Voluntariness of the Guilty Plea

In his first ground for relief, Petitioner claims his plea was coerced due to unspecified threats made by his co-defendant, personally, and on behalf of a man identified only as "El Chino" from New York City.

To comport with the Due Process Clause of the Fourteenth Amendment, a guilty plea must be knowing and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242 (1969).  Thus, "[a] valid guilty plea may not be obtained through coercion."  Osborn v. Shillinger, 997 F.2d 1324, 1327 (10th Cir. 1993).  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1970) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).  On habeas review, a federal court will "uphold a state court guilty plea if the circumstances demonstrate that the defendant

5

understood the nature and consequences of the charges and the defendant voluntarily chose to plead guilty." Cunningham v. Diesslin, 92 F.3d 1054, 1060 (10th Cir.1996).

The record before the Court demonstrates Petitioner's plea was voluntary.  A plea hearing was held on May 12, 2009.  See State Court Records, Transcript of Proceedings, Guilty Plea/Judgment and Sentence ("Plea Tr.").[2]  At the hearing, the trial court took testimony and entered pleas from both Petitioner and his co-defendant.  Petitioner testified that he understood the trafficking charges against him and the range of punishment that could be imposed.  Plea Tr. at 10.[3]  He further admitted that he was guilty of the charges and to possession of the 1350 grams of cocaine which supported the trafficking charge.  Plea Tr. at 11.  He also admitted he acted in concert with his co-defendant.  Id.  Petitioner further testified that he was satisfied with his attorney's representation, that he had not been promised anything in exchange for his plea, and that he had not been threatened, forced, or coerced by anyone.  Plea Tr. at 12-13.  In addition, Petitioner testified he was voluntarily entering his guilty plea.  Plea Tr. at 13.

In addition to the testimony Petitioner gave at the plea hearing, he also completed a Plea of Guilty Summary of Fact form.  See Response, Exhibit 16.  He affirmatively stated there, as well, that he was pleading guilty of his own free will and without any coercion or compulsion of any kind.  Id.  As the factual basis of the plea, Petitioner stated that on

---

[2]An interpreter was present on Petitioner's behalf at the plea hearing.

[3]Petitioner was initially charged with Aggravated Trafficking, but the charge was reduced pursuant to plea negotiations.  See OCCA Summary Opinion at 1, footnote 1.  See also Plea Tr. at 3-4.

February 12, 2009, in Beckham County, Oklahoma, he was in possession of cocaine.  Id.

Petitioner then moved to withdraw his plea.  In support, Petitioner claimed his plea was not voluntary because he was coerced into entering the plea and had entered the plea without full knowledge.  See Response, Exhibit 12, Motion to Withdraw Plea of Guilty.

On June 29, 2009, the trial court conducted a hearing on Petitioner's motion to withdraw his guilty plea.[4]  At the hearing, Petitioner testified his plea was coerced because his co-defendant had made "threatening looks" at him in the courtroom.  Motion Tr. 6-7, 8. He also claimed his co-defendant was communicating threats on behalf of a man nicknamed "El Chino" from New York.  Motion Tr. at 8-9.  Petitioner did not specify the nature of these threats.

Petitioner claimed he did not tell the judge or his attorney at the time of the plea hearing about the threatening looks because he was scared.  Motion Tr. at 7, 14.  Petitioner further claimed he wanted to withdraw his plea because he was innocent of the charge. Motion Tr. at 8.

The trial court overruled Petitioner's request to withdraw his plea finding that Petitioner had been "asked if there was any coercion on multiple times on the plea of guilty summary of facts and when he entered his plea."  Motion Tr. at 19.  Petitioner then filed a petition for writ of certiorari before the OCCA.  See Response, Exhibits 1-2.

The OCCA rejected Petitioner's claim that his plea was the result of coercion and,

_____

[4]An interpreter was present on Petitioner's behalf at the hearing on the motion.

7

therefore, not voluntary.  The OCCA held:

> [W]e find that Belliard indicated, during the plea hearing, that he was entering his plea without coercion.  We find that the trial court did not abuse its discretion in failing to allow him to withdraw the plea based on this issue, as Belliard did not meet his burden in this case. [citation omitted].

See Response, Exhibit 5, OCCA Summary Opinion Denying Certiorari at 2.

The OCCA's factual findings are presumed correct, see 28 U.S.C. § 2254(e), and Petitioner has not rebutted those findings by clear and convincing evidence.  In addition, Petitioner's allegations of coercion are wholly conclusory and belied by the testimony Petitioner gave at the plea hearing and the statements included in the guilty plea summary of facts form.  Petitioner provides no evidence to demonstrate he was not acting of his own free will when he entered the plea.  Compare United States v. Carr, 80 F.3d 413, 417 (10th Cir. 1996) (allegations that appellant was "hounded, browbeaten and yelled at" by his own attorney, acting in collaboration with co-defendant's attorney did not vitiate voluntariness of plea); Nelson v. McKinna, No. 95-1190, 1995 WL 610891 (10th Cir. Oct. 18, 1995) (unpublished op.) (allegations that defendant entered plea due to fear of being forced to implicate third-party who had threatened defendant and her children did not render plea involuntary as defendant failed to demonstrate a causal link between this fear and the decision to plead guilty); United States v. Hibler, 2012 WL 2120001 (D. Kan. June 11, 2012) (unpublished op.) (defendant's allegations that he pleaded guilty to protect his son from further abuse did not establish coercion; although defendant credibly alleged he was experiencing stress at time of guilty plea, he did not put forth evidence showing he did not

plead guilty of his own free will).

The OCCA's determination that Petitioner entered his plea without coercion is not contrary to or an unreasonable application of clearly established federal law. Ground One of the Petition should be denied.

### B.     Ground Two – Claims of Ineffective Assistance of Trial Counsel

Petitioner claims in Ground Two of the Petition that he was denied the effective assistance of trial counsel because "his counsel failed to notify the state and court of his status as a forign [sic] national and thereby invoke his rights under the Vienna Convention." See Petition at 7, Ground Two. In addition, Petitioner claims counsel was ineffective for failing to advise him of the deportation consequences of his plea.[5]

The OCCA applied Hill v. Lockhart to reject Petitioner's ineffective assistance of counsel claims. The OCCA held:

> Belliard has not shown that he was prejudiced by (1) counsel's failure to ensure the consulate of the Dominican Republic was contacted or (2) counsel's alleged failure to advise him that his guilty plea would subject him to deportation. Belliard has provided no evidence that, had these procedures been accomplished, he would have insisted on going to trial instead of pleading guilty; therefore, he cannot show prejudice.

See OCCA Summary Opinion Denying Certiorari at 3 (citations omitted). As previously set

---

[5]Petitioner does not expressly raise this second claim of ineffective assistance in Ground Two of the Petition. However, as noted, Petitioner incorporates by reference his state court briefs. Petitioner did file a supplemental brief on this claim before the OCCA and the OCCA addressed the merits of the claim. In addition, Respondent has addressed the merits of this second claim. Therefore, due to Petitioner's *pro se* status and out of an abundance of caution, the Court construes the habeas Petition to include a claim that trial counsel was ineffective for failing to advise Petitioner of the deportation consequences of his plea.

forth, the OCCA further denied Petitioner's Application for Evidentiary Hearing on Sixth

Amendment Claim, <u>see</u> Response, Exhibit 3, stating:

> Belliard has filed an application for evidentiary hearing on Sixth Amendment
> claims contemporaneously with his brief. See Rule 3.11, Rules of the
> Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2010).
> However, we find that the documents contained therein do not meet the criteria
> for an evidentiary hearing. There is nothing indicating that contacting
> Dominican consulate could have changed the outcome of this case.
> Furthermore, there is nothing in his proffered materials indicating that counsel
> did not advise him that he faced deportation as a result of his plea or that he
> was unaware that he would face such consequence.

<u>See</u> OCCA Summary Opinion at 3, footnote 2.[6]

In <u>Hill v. Lockhart</u>, the Supreme Court set out the applicable standard for reviewing

ineffective assistance of counsel claims in the context of guilty pleas. In accord with

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), a defendant challenging the effective

assistance of counsel during the guilty plea process must show that counsel's performance

was deficient and that such deficient performance prejudiced him. <u>Lockhart</u>, 474 U.S. at

57–58. The review of counsel's performance is "highly deferential" and a petitioner must

overcome the strong presumption that counsel rendered adequate assistance. <u>See</u> <u>Byrd v.</u>

<u>Workman</u>, 645 F.3d 1159, 1168 (10th Cir. 2011). To be deficient, counsel's performance

must be "completely unreasonable, not merely wrong." <u>Id.</u> (internal quotations and citation

---

[6]It is clear from the OCCA's ruling that the state appellate court considered the non-record
evidence provided by Petitioner and applied the standard found in Rule 3.11, Rules of the Oklahoma
Court of Criminal Appeals, to deny Petitioner's request for an evidentiary hearing. Because the
OCCA considered the non-record evidence when rendering its decision, the ruling is entitled to
deference by this federal habeas court. <u>Wilson v. Sirmons</u>, 536 F.3d 1064, 1080 (10th Cir. 2008),
<u>reinstated</u> <u>en</u> <u>banc</u>, 577 F.3d 1284 (10th Cir. 2009).

omitted).

As to the prejudice prong of the analysis, the relevant inquiry is whether counsel's ineffective assistance affected the outcome of the plea process. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id., 474 U.S. at 58-59. Demonstrating a reasonable probability "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1403 (2011) (citing Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 791 (2011)).

Where, as here, the ineffective assistance of counsel claim has been adjudicated on the merits by the state courts and subject to § 2254 deference, the "challenge is even greater for a petitioner," as habeas review in such circumstances is "doubly deferential." Byrd, 645 F.3d at 1168 (citing Knowles v. Mirzayance, 556 U.S. 111, 129 (2009)).

With these standards in mind, the Court proceeds to review Petitioner's claims of ineffective assistance of trial counsel.

### 1.    The Vienna Convention on Consular Relations ("VCCR")[7]

Petitioner asserts his trial counsel's failure to invoke Petitioner's rights under the

---

[7]Article 36 of the VCCR generally provides that "when a national of one [signatory] country is detained by authorities in another, the authorities must notify the consular offices of the detainee's home country if the detainee so requests." Sanchez-Llama v. Oregon, 548 U.S. 331, 338-339 (2006).

VCCR prejudiced him in two ways.[8]  First, Petitioner claims "he was denied the right to legal assistance from his consulate."  Petitioner contends "[t]his legal assistance was vital in helping to navigate the cumbersome immigration laws both at the state and federal levels." See Response, Exhibit 3, Application for Evidentiary Hearing on Sixth Amendment Claims ("Application") at 6. Second, Petitioner claims "the VCCR provides for certain provisions that some statements made to law enforcement may be inadmissible as evidence."  Petitioner contends that "[i]t *may* be that [he] has a suppression issue under the VCCR as well."  See id. (emphasis added).[9]

However, Petitioner fails to identify what specific "legal assistance" the consulate would have provided or how that assistance would have affected his decision to enter a plea. Also, he fails to identify what suppression issues might have existed or how those issues would have affected his decision to enter a plea.[10]  While Petitioner contends certain

---

[8]As the Tenth Circuit has observed: "neither this court nor the Supreme Court has resolved the question whether the Vienna Convention confers individually enforceable rights upon a defendant."  United States v. Navarro-Flores, 421 Fed. Appx. 863, 866 (10th Cir. April 28, 2011) (unpublished op.) (citing Sanchez–Llamas, 548 U.S. at 342 (declining "to resolve the question whether the Vienna Convention grants individuals enforceable rights"); Torres de la Cruz v. Maurer, 483 F.3d 1013, 1024 n. 11 (10th Cir. 2007) (expressing "serious doubts" the Vienna Convention grants individually enforceable rights)).

[9]Although Petitioner has not expressly referenced his Application for Evidentiary Hearing on Sixth Amendment Claim filed in the state courts, the OCCA considered the additional arguments and evidence contained in that application in making its determination.  Again, due to Petitioner's *pro se* status and out of an abundance of caution, the Court construes the habeas Petition to include the additional arguments Petitioner raised in the application for evidentiary hearing.

[10]Petitioner has not demonstrated suppression of evidence is even an appropriate remedy for alleged violations of the VCCR.  See Sanchez-Llamas, 548 U.S. at 337 (holding that arresting officer's failure to comply with VCCR's consular-notification provision does not warrant

unspecified statements he made to law enforcement might have been inadmissible, he does not challenge in any way the admissibility of the cocaine seized from him and which served as the factual basis of his guilty plea.

Petitioner has not demonstrated how contacting his consulate would have changed his understanding of the terms of his plea or changed his guilty plea.[11]  Instead, Petitioner's ineffective assistance of trial counsel claim lacks merit as it is based on wholly conclusory and speculative allegations.  Compare Lewis v. United States, 2011 WL 4352356 at * 4 (D. N. J. Sept. 15, 2011) (unpublished op.) (claim that had consulate been notified petitioner would have received "critical legal resources" to assist with language and cultural barriers and direct intervention from consulate was speculative and did not establish prejudice as required to support Strickland claim); United States v.  Munoz, 2010 WL 3732173 at *5 (N.D. Okla. Sept. 20, 2010) (unpublished op.) (petitioner's claim that had he been "given the opportunity to contact the Mexican Consulate, he could have requested their assistance in translating all of his legal documents that pertained to his case and he could have made a more intelligent choice of pleading guilty to the charges" was "simply inadequate" to

---

suppression of evidence); see also United States v. Minjares-Alvarez, 264 F.3d 980, 986 (10th Cir. 2001) ( "suppression is no t an appropriate remedy for a violation of Article 36 of the [VCCR] . . . ." (citations omitted).

[11]Indeed, affidavits attached to Petitioner's Application for Evidentiary Hearing on Sixth Amendment Claims filed with the OCCA show that efforts to contact the Consular's Office for the Dominican Republic on behalf of Petitioner in the course of his direct appeal were unsuccessful. The Consular's Office did not return any of the numerous calls or respond to written correspondence directed to the office on Petitioner's behalf.  See Response, Exhibit 3, Application, Affidavit of Kim A. Marks.

establish the prejudice necessary to prevail on an ineffective assistance of counsel claim); United States v. Yeboah, 2009 WL 3738790 at * 3 (S.D. N.Y. Nov. 9, 2009) (unpublished op.) (claim that trial counsel failed to advise defendant of his right to contact a consular office under the VCCR lacked merit where defendant did not "describe  any way in which he was prejudiced by the absence of such consular contact, nor indeed any effect the lack of consular conduct had on the Court's proceedings or on his conviction").   Accordingly, Petitioner's ineffective assistance of trial counsel claim should be denied.

### 2.     <u>Deportation Consequences of the Plea</u>

Petitioner claims that he has pled guilty to a drug crime "that will lead to his ultimate deportation from the United States and presumably a revocation of his legal status."  <u>See</u> Supplemental Brief and Amended Proposition of Error at 8; <u>see</u> <u>also</u> Petition for Rehearing at 2-3.  Petitioner claims <u>Strickland</u> prejudice on this basis.

In <u>Padilla v. Kentucky</u>, __ U.S. __, 130 S.Ct. 1473 (2010), the Supreme Court held that an attorney's failure to advise a client that a guilty plea carries the risk of deportation constitutes deficient performance under the first prong of the <u>Strickland</u> analysis.[12]  Petitioner alleges, both here and before the state courts, that his attorney did not advise him of any deportation consequences of the plea.  Petitioner's allegations are not supported by any evidentiary materials.  For instance, Petitioner does not support his claim with an affidavit

---

[12]<u>Padilla</u> was decided during the pendency of Petitioner's direct appeal of his conviction before the OCCA and the OCCA applied <u>Padilla</u> in rejecting Petitioner's ineffective assistance of trial counsel claim.

from his trial counsel stating that trial counsel did not advise him of the deportation consequences of the plea.  As discussed below, the OCCA denied the claim on the prejudice prong of the <u>Strickland</u> analysis.  But the OCCA did find that "there is nothing in the proffered materials indicating that counsel did not advise him that he faced deportation as a result of his plea or that he was unaware that he would face such consequence."  <u>See</u> OCCA Summary Opinion at 3, footnote 2.  This Court's independent review of the record comports with the findings of the OCCA.  Thus, Petitioner's conclusory allegations, standing alone, do not appear to support a finding that the deficient performance prong of <u>Strickland</u> has been satisfied.  Indeed as the Supreme Court observed in <u>Padilla</u>, "[f]or the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea."  <u>Id</u>. at 1485.  The Court expressly instructed therefore, that when reviewing an ineffective assistance claim alleging failure to advise about deportation consequences, courts should continue to  "presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty."  <u>Id</u>. at 1485.

But even if counsel's performance were deficient, Petitioner has not established that the OCCA's finding that Petitioner was not prejudiced by any deficient performance is contrary to or an unreasonable application of <u>Strickland</u>.   The OCCA found that Petitioner "has provided no evidence that, had [counsel advised him that his guilty plea would subject him to deportation], he would have insisted on going to trial instead of pleading guilty[.]" <u>See</u> OCCA Summary Opinion at 3.

To establish prejudice, Petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." <u>Padilla</u>, 120 S.Ct. at 1485. But Petitioner offers no additional evidence before this Court to demonstrate prejudice. Instead, as before the OCCA, Petitioner continues to make only conclusory statements of prejudice.   Contrary to these conclusory statements, the records shows evidence of Petitioner's guilt was strong, a factor that weighs against any finding of prejudice.  In addition, Petitioner does not identify with any specificity the nature of the "deportation consequences" he faces, nor cite to the applicable authority that would govern such consequences. Applying the <u>Strickland</u> framework Petitioner's claim falls in the category of a "specious claim" rather than a claim with "substantial merit." <u>Padilla</u>, 130 S.Ct. at 1485.  See also <u>United States v. Perea</u>, 2012 WL 851185 at *3 (D. Kan. March 8, 2012) (unpublished op.) (strong evidence of defendant's guilt supported finding that "no rational defendant would have proceeded to trial" where defendant's only evidence to the contrary was his conclusory sworn statement that he would have proceeded to trial if he had known he would be deported).

In sum, Petitioner has failed to demonstrate trial counsel was ineffective based on the alleged failure to ensure the consulate of the Dominican Republic was contacted or to advise Petitioner of the deportation consequences of the plea.  The OCCA's adjudication of these issues in not contrary to or an unreasonable application of clearly established federal law. Applying the "doubly deferential" standard applicable to Petitioner's <u>Strickland</u> claims, Ground Two of the Petition should be denied.

16

**C.      Ground Three – Immigration Consequences of the Plea**

In Ground Three, Petitioner raises a due process challenge claiming he did not knowingly and intelligently enter his guilty plea because he was nor advised of the "immigration consequences" of his plea.   As with his Sixth Amendment claim premised on similar allegations, Petitioner offers no evidence to demonstrate he was not advised of the immigration consequences of his plea.  Nor does Petitioner describe with any degree of particularity what immigration consequences he faces as a result of the plea.

On direct appeal, the OCCA rejected this claim.  The OCCA found Petitioner "was informed of all the requisite material consequences flowing directly from the decision to plead." <u>See</u> OCCA Summary Opinion at 3-4.

The record before the Court demonstrates Petitioner's plea was knowing and voluntary and the OCCA's determination of this issue is not contrary to or an unreasonable application of clearly established federal law.  At the plea hearing, the trial court determined, based on the testimony presented and the Plea of Guilty Summary of Facts form, that Petitioner's plea was knowingly, voluntarily and intelligently entered.  <u>See</u> Supplemental Response, Exhibit 9, Transcript of Pleas of Guilty (Tr.) at 8.  The state court's factual findings are entitled to a presumption of correctness, <u>see</u> 28 U.S.C. § 2254(e), and Petitioner has not rebutted that presumption.

In addition, Petitioner has cited no clearly established federal law which holds that a criminal defendant must be advised of the immigration consequences of his plea to comport with due process.  <u>See</u> <u>House</u>, 527 F.3d at 1018 (the determination that there is no clearly

17

established federal law "is analytically dispositive in the § 2254(d)(1) analysis" and without

such law, a habeas petitioner's claim necessarily fails).  To the contrary, long-standing

precedent establishes that such consequences, like deportation,  are "collateral" and,

therefore, "[a]ctual knowledge of th[os]e consequences . . . is not a prerequisite to the entry

of a knowing and intelligent plea."  Varela v. Kaiser, 976 F.2d 1357, 1358 (10th Cir. 1992).[13]

    In sum, Petitioner has failed to demonstrate his plea was not knowingly and

voluntarily entered.  Petitioner has not demonstrated the OCCA's determination of the issue

is contrary to or an unreasonable application of clearly established federal law.  In addition,

Petitioner has failed to cite clearly established Supreme Court precedent requiring, as a

matter of due process, that a defendant be advised of the deportation consequences of his

plea.  For these reasons, Ground Three of the Petition should be denied.

---

[13]The Court acknowledges that in Padilla, the Supreme Court observed that "[d]eportation as a consequence of a criminal conviction is . . . uniquely difficult to classify as either a direct or a collateral consequence."  Padilla, 130 S.Ct. at 1482.  And, the Supreme Court specifically declined to address "how to distinguish between direct and collateral consequences of a guilty plea."  Id. at 1481 n. 8.  As discussed in relation to the claims raised in Ground Two of the Petition, Padilla addressed counsel's obligations under the Sixth Amendment to advise a criminal defendant of the deportation consequences of a guilty plea.  The Court did not address the analytically distinct requirements of due process with respect to advising a criminal defendant of those consequences.  At least one Circuit Court of Appeals post-Padilla has expressly found that "[w]hile Padilla's holding is directly applicable to [its] Sixth Amendment analysis . . . , it sheds no light on the obligations a district court may have under . . . due process."  United States v. Delgado-Ramos, 635 F.3d 1237,  (9th Cir. 2011).  See also United States v. Nicholson, 676 F.3d 376, 382, n. 3 (4th Cir. 2012) (noting the position of the Advisory Committee on Criminal Rules that: "Padilla was based solely on the constitutional duty of defense counsel, and does not speak to the duty of judges.") (citing Report of the Advisory Committee on Criminal Rules (Dec. 8, 2010)); United States v. Dwumaah, 2010 WL 2294051 (M.D. Pa. June 2, 2010) (unpublished op.) (while the Supreme Court rejected the collateral versus direct distinction in the Sixth Amendment context, "its holding does not compel this court to abandon that distinction in the context of a due process claim.").  Thus the Court follows the long-standing precedent in this Circuit that – under a due process analysis – deportation is a collateral consequence.

### D.      Ground Four – Credit for Time Served

In Ground Four of the Petition, Petitioner claims, as he did on appeal before the OCCA, that the judgment and sentence did not reflect the oral ruling by the trial court at the conclusion of the plea hearing that Petitioner receive credit for time served in the county jail. The OCCA granted relief on this claim.  See OCCA Summary Opinion Denying Certiorari at 4 ("In proposition four, we find that the Judgment and Sentence should be amended to reflect credit for time served, to conform to the oral pronouncement by the trial court.  We order that the trial court do this by an order *nunc pro tunc."*).  Petitioner's claim in Ground Four fails to allege the violation of a constitutional right subject to habeas review.  Estelle v McGuire, 502 U.S. 62, 67-68 (1991). Moreover, even if Petitioner had stated a cognizable constitutional claim, the state court has granted Petitioner all the relief to which he is entitled, rendering his request for habeas relief moot.  See, e.g., Stratmoen v. Ward, 248 Fed. Appx. 17, 20 (10th Cir. Sept. 5, 2007) (unpublished op.) (where state court grants all the relief to which a habeas petitioner would be entitled, those same claims raised on federal habeas review are rendered moot).  Ground Four of the Petition, therefore, should be denied.

### V.      Additional Relief Requested by Petitioner

In conclusory fashion, Petitioner requests, as additional relief, "an evidentiary hearing with counsel appointed" and that "his deportation be withheld."   See Petition at 17. Petitioner does not support his request for an evidentiary hearing with any new evidence, argument or authority.  Indeed, Petitioner does not even allude to any additional factual findings that would aid his case.  Moreover, the state courts have already made findings and

this Court's review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Pinholster</u>, 131 S.Ct. at 1398.[14]   Accordingly, Petitioner's request for an evidentiary hearing with court appointed counsel should be denied.

In addition, Petitioner requests that his deportation be withheld.  But a challenge to Petitioner's deportation is not proper in this habeas corpus proceeding, nor has Petitioner demonstrated he is currently subject to any order of deportation.  Accordingly, Petitioner's request for relief should be denied.

## **RECOMMENDATION**

Based on the foregoing findings made in this Report and Recommendation, the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 should be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by      August 7th , 2012, in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling.  <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir.1991); <u>cf</u>. <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

---

[14]In <u>Pinholster</u>, as here, the Supreme Court determined the petitioner had failed to demonstrate that the adjudication of his claim based on the state court record resulted in a decision contrary to or involving an unreasonable application of federal law. <u>See</u> 28 U.S.C. § 2254(d).  The Court declined to consider whether § 2254(e)(2) prohibited the district court from holding an evidentiary hearing or whether a district court may ever hold an evidentiary hearing before it determines that § 2254(d) has been satisfied. <u>Id</u>., 131 S.Ct. at 1411 n. 20.

This Report and Recommendation disposes of all of the issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____18th____ day of _____ July, 2012.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE